Filed 9/10/20  P. v. Martinez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIO MARTINEZ,<br><br>Defendant and Appellant. | B299702<br><br>(Los Angeles County<br>Super. Ct. No. TA070425) |

APPEAL from an order of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Affirmed.

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kristen J. Inberg and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Mario Martinez appeals from the superior court's order denying his petition under Penal Code section 1170.95,[1] which allows certain defendants convicted of murder under a felony murder or natural and probable consequences theory to petition the court to vacate their convictions and for resentencing. Martinez argues the superior court erred in summarily denying his petition without giving him an opportunity to file a reply to the prosecutor's response to his petition. Martinez, however, was not convicted under a felony murder or natural and probable consequences theory, a fact he does not challenge. Therefore, Martinez is not eligible for relief under section 1170.95, and any procedural error in the superior court's summary denial of his petition was harmless.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Martinez of Second Degree Murder, and This Court Affirms*

In March 2002 Martinez was driving his car with co-defendant Juan Hernandez in the passenger seat when they saw Salvador Alvarez walking with his nephews. Martinez and Hernandez drove slowly by the three men and began "mad dogging" them.[2] Martinez drove past Alvarez, stopped the car,

---

[1]    Statutory references are to the Penal Code.

[2]    "[M]ad-dogging" means looking at someone "in an aggressive manner." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 194.)

and backed up.  Hernandez repeatedly asked Alvarez, "'Where are you from?'" and "'Who are you mad dogging?'"  Alvarez understood the questions as gang challenges and responded, "'What's up?'"  Hernandez and Martinez continued to ask Alvarez, "'Where are you from?'"

Martinez stopped the car, and Hernandez got out holding a gun.  Alvarez yelled, "Go ahead.  Pull the trigger."  When Hernandez was a few feet from Alvarez, he pointed the gun at Alvarez's chest and fired three times, hitting Alvarez once in the chest and again as Alvarez spun around.  Alvarez died from two fatal gunshot wounds, one to his upper shoulder and one to the middle of his back.  Martinez stayed in the car during the shooting.  When Hernandez got back in the car, Martinez drove away.

A jury found Martinez guilty of second degree murder (§ 187, subd. (a)) on the theory he aided and abetted Hernandez. The trial court sentenced him to a prison term of 15 years to life. In December 2005 this court affirmed Martinez's conviction. (*People v. Hernandez* (Dec. 6, 2005, B177518) [nonpub. opn.].)

B.      *The Legislature Enacts Senate Bill No. 1437 and Establishes the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder by amending sections 188 and 189.  New section 188, subdivision (a)(3), provides:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a

3

crime." New section 189, subdivision (e), provides that, with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs (that is, those crimes that provide the basis for first degree felony murder), an individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (See *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1140 [Senate Bill No. 1437 "eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life"].)

Senate Bill No. 1437, through new section 1170.95, also authorized an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill No. 1437's changes to the definition of the crime. The petition must include a declaration by the petitioner he or she is eligible for relief under section 1170.95, the superior court case number and year of the petitioner's conviction, and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see

4

*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327, review granted Mar. 18, 2020, S260493 (*Verdugo*).)[3]

If the petition contains all required information, and the court determines the petition is facially sufficient, section 1170.95, subdivision (c), prescribes a two-step procedure for the court to determine whether to issue an order to show cause: "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) Thus, subdivision (c) "prescribes two additional court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo,* at pp. 327-328.)

---

[3] The Supreme Court deferred briefing in *Verdugo*, *supra*, S260493 pending its decision in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598. The Supreme Court limited briefing and argument in *Lewis* to the following issues: (1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?

If the court determines the petitioner has made a prima facie showing and issues an order to show cause, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

C.    *Martinez Files a Petition Under Section 1170.95*

In January 2019 Martinez filed a petition under section 1170.95, using "a downloadable form petition/declaration prepared by Re:Store Justice, a cosponsor of the legislation (see Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Feb. 16, 2018, p. 1)." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 324.) The form petition "consists of a declaration with boxes to be checked against averments essentially tracking the statutory language as to the prerequisites for filing a petition and demonstrating a prima facie showing that the petitioner falls with the provisions of section 1170.95 and is eligible for relief." (*People v. Edwards*, *supra*, 48 Cal.App.5th at p. 670.)

6

Martinez checked almost every box on the form petition. In particular, he checked boxes alleging (1) "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2a) "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; (2b) "I pled guilty or no contest to 1st or 2nd degree murder in lieu of going to trial because I believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine"; (3) "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1, 2019"; and (4) "I request that this court appoint counsel for me during this re-sentencing process." Martinez also checked boxes stating "I was not the actual killer"; "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; "I was not a major participant in the felony or I did not act with reckless indifference to human life during the course of the crime or felony"; "The victim of the murder was not a peace officer . . . ."; and "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019." Martinez's petition included his name, his superior court case number, and the year of his conviction.

The superior court responded to the petition with a series of orders that, in retrospect, appears to have combined elements of

the first and second steps under section 1170.95, subdivision (c). On February 28, 2019 the superior court issued an order stating that the court had reviewed Martinez's petition and "requested the actual court file from archives but is not in possession of the necessary documents at this time. The court is requesting any documentary evidence that may assist the reviewing court," including "copies of the jury instructions used at [Martinez's] trial (specifically those that relate to a theory of felony-murder of any degree, or a theory of natural and probable consequences)." The court also requested "all verdict forms and their findings from that trial," any "appellate opinions affirming the petitioner's conviction and sentence," and "any other available documentary evidence that may assist the court in the review of the petition . . . ." The court stated that, after it reviewed "the petition and the submissions of the parties," it would hold a hearing on the petition on March 14, 2019. The court did not find Martinez had stated a prima facie case for relief or issue an order to show cause, but the next day, March 1, 2019, the court appointed counsel to represent Martinez on his petition.

On March 14, 2019 the superior court, over Martinez's objection, granted the prosecutor's "request for extension of time to file [a] return" and set the next hearing for May 15, 2019. On May 15, 2019 the prosecutor filed a request for an "extension of time to file [a] return." The court entered an order extending the prosecutor's time to file an "informal response" and stated, "The court does not make a prima facie finding today." The court ordered the prosecutor to file the informal response by June 11, 2019 and set a "prima facie hearing" for June 27, 2019. On June 11, 2019 the court continued the hearing to July 31, 2019.

On July 9, 2019 the prosecutor filed a response to Martinez's petition, attaching as exhibits this court's opinion in Martinez's direct appeal and the jury instructions in Martinez's trial. The prosecutor argued Martinez was ineligible for relief under section 1170.95 because he was not convicted of murder under a felony murder or natural and probable consequences theory, but rather was convicted as a direct aider and abettor who acted with malice and intent to kill.

The next day, July 10, 2019, before counsel for Martinez had an opportunity to file a reply, the court summarily denied Martinez's petition. The court ruled Martinez was not entitled to relief under section 1170.95 as a matter of law because, "although the jury was instructed as to aiding and abetting, the jury was not instructed regarding natural and probable consequences nor pursuant to a theory of felony-murder. Further, the jury found the defendant guilty pursuant to a theory of malice aforethought/intent to kill thus rendering petitioner's claims pursuant to . . . section 1170.95 meritless." The court also vacated the July 31, 2019 hearing. Martinez timely appealed.

## DISCUSSION

As we explained in *Verdugo*, the "structure and grammar of [section 1170.95, subdivision (c),] indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332.) For the second step of the prima facie analysis under section 1170.95, subdivision (c), involving briefing, the statute states that the "prosecutor shall file and serve a response within 60 days of service of the petition" and that "the petitioner may

9

file and serve a reply within 30 days after the prosecutor response is served." Martinez contends the superior court erred in denying his petition because the court "failed to comply with the requirement set forth in the statute that the court allow [the petitioner] 30 days to file a reply to the prosecution's response in opposition to appellant's petition."

The superior court appears to have believed at least at the outset that Martinez made an initial prima facie showing under the first step of section 1170.95, subdivision (c): The court on March 1, 2019 appointed counsel for Martinez and referred to what the court was requiring the prosecutor to file as a "return." By May 15, 2019, however, the court called the prosecutor's filing an "informal response" and stated the court was not yet making a prima facie finding.

If the court had proceeded to the second step of the prima facie analysis under section 1170.95, subdivision (c), the court should have allowed Martinez to file a reply. As we stated in *Verdugo*, if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must appoint counsel if requested, direct the prosecutor to file a response to the petition, permit the petitioner to file a reply, and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 330-331.) If this is what the court did, the court may have violated section 1170.95 by denying Martinez the opportunity file a reply, although the law governing the procedure under the newly enacted statute was not as developed then as it is today.

As we also explained in *Verdugo*, however, the superior court, after receiving a facially sufficient petition, may examine

10

readily available portions of the record of conviction to determine whether the petitioner has made a prima facie showing and thus falls within the provisions of section 1170.95.  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-331.)  In particular, the court may review "the complaint, information, or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment."  (*Id*. at pp. 329-330; see *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055; *People v. Tarkington, supra,* 49 Cal.App.5th at p. 908; *People v. Edwards, supra,* 48 Cal.App.5th at p. 674.)  The court may also review a "court of appeal opinion, whether or not published, [that] is part of the appellant's record of conviction."  (*Verdugo,* at p. 333; *Lewis, supra*, 43 Cal.App.5th at p. 1138.)

Here, the record of conviction shows that Martinez was not convicted of felony murder or murder under the natural or probable consequences theory.  The trial court did not instruct the jury on felony murder or murder under a natural or probable consequences theory, nor is there any reference to either theory in this court's prior opinion.  (See *People v. Soto*, *supra*, 51 Cal.App.5th at p. 1055 [petitioner "was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine" where "the jurors were not provided any instruction on which they could have found [the petitioner] guilty of murder under that doctrine," but "under the instructions, the jury necessarily found [the petitioner] culpable for murder based on his own actions and mental state as a direct aider and abettor of murder"]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595-596 [direct aiding and abetting theory of liability survives the changes following Senate Bill No. 1437.)  Indeed, Martinez does not argue he was convicted under either

11

such theory.  Thus, section 1170.95 does not apply to Martinez's conviction.

In these circumstances, a reply brief would not have changed the fact Martinez is ineligible for relief under section 1170.95 as a matter of law.  (See *People v. Law* (2020) 48 Cal.App.5th 811, 826 [any error in denying the defendant's section 1170.95 petition was harmless because, "[g]iven the trial evidence, counsel would not have been able to demonstrate in a reply brief or otherwise" the petitioner was eligible for relief], review granted July 8, 2020, S262490; *People v. Edwards*, *supra*, 48 Cal.App.5th at p. 675 [because the petitioner "does not fall within the provisions of section 1170.95 as a matter of law, any . . . purported [procedural] errors were harmless under any standard of review [citations] and remand would be an idle act"].) Therefore, any procedural error in not allowing Martinez to file a reply brief under the second step of section 1170.95, subdivision (c), was harmless under the state law error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.  (See *People v. Epps* (2001) 25 Cal.4th 19, 29 [when the error is "purely one of state law, the *Watson* harmless error test applies]; cf. *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252 ["violation of a statutory right to counsel is properly reviewed under the harmless error test enunciated in *People v. Watson*"].)[4]

---

[4]     For the same reason, any violation by the court of Martinez's due process rights in denying his petition before he filed a reply brief was harmless beyond a reasonable doubt under the standard in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824].

## DISPOSITION

The order is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.